**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**OPAL JANE HURT,**

                **Plaintiff,**

**-vs-**                                                            **Case No.  6:12-cv-214-Orl-DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

## I.    BACKGROUND

### A.    Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on February 12, 2010. R. 145, 149. She alleged an onset of disability on June 30, 2009, due to abdominal lymphadenopathy, hernia, anxiety, essential hypertension, fatigue, nausea and vomiting, and depression. R. 38-39, 72-74, 149, 170. Her application was denied initially and upon reconsideration. R. 84-9, 94-100. Plaintiff

requested a hearing, which was held on May 13, 2011, before Administrative Law Judge Kelley Fitzgerald (hereinafter referred to as "ALJ"). R. 27-71. In a decision dated August 24, 2011, the ALJ found Plaintiff not disabled as defined under the Act through the date of her decision. R. 8-26. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 5-7. The Appeals Council denied Plaintiff's request on December 6, 2011. R. 1-4. Plaintiff filed this action for judicial review on February 9, 2012. Doc. 1.

### B.     Medical History and Findings Summary

At the time of the hearing, Plaintiff was forty-one years of age. (Transcript 31). She had two years of college and past relevant work consisting of a nurse assistant, truck driver, administrative clerk, and a painter. R. 21, 63-64, 149, 171-72, 187. The vocational expert indicated that these jobs were classified as sedentary, light and medium exertional work. R. 63-64. She also testified that she did paperwork for her husband who painted houses. R. 35-36.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of depression and mood disorder, lymphadenopathy, hernia, hypertension, fatigue, nausea and vomiting. R. 38-39, 72-74, 149, 170. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from mesenteric lymphadenopathy, hypertension, depression, anxiety, and substance addiction, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 13. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) for simple, routine and repetitive light work that did not involve more than occasional stooping, interaction with co-workers and supervisors, and no more than superficial interaction with the general public. R. 14. Based upon Plaintiff's RFC, the ALJ determined that she could not perform her past relevant work. R. 19. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R.

Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a marker, addresser, and maid. R. 20. The ALJ, therefore, found that Plaintiff was not disabled pursuant to 20 C.F.R. §§ 404.1520 (g), 416.920(g). R. 28. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 20-21.

Plaintiff now asserts two points of error. She argues that the ALJ erred by finding she had the RFC to perform light work with certain non-exertional limitations, without discussing Plaintiff's GAF scores and the opinion of Plaintiff's treating physician. Plaintiff contends the ALJ erred by improperly applying the pain standard and in evaluating her credibility. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II.    STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir.

2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

### A.   RFC

Plaintiff claims that the ALJ should not have found her able to perform light work (with certain additional non-exertional limitations based on pertinent evidence in the record. She contends that since the ALJ did not adequately consider all the evidence in the record, the ALJ's determination

of her RFC was not based on substantial evidence. The Commissioner contends that the ALJ has properly assessed the record.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

The ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b); except with no more than occasional interaction with co-workers and supervisors; no more than superficial interaction with the general public; no driving; and no more than simple, routine, repetitive tasks. R. 14. Plaintiff contends that the ALJ erred when determining her RFC in not considering or specifically discussing various global assessment of functioning ("GAF") scores.

Plaintiff points to low GAF scores of 35, 45, and 50 in her mental health records. R. 251 (GAF of 45 on October 13, 2009) R. 292 (GAF of 50 on February 12, 2010); R. 369 (GAF of 35 on December 13, 2010). Plaintiff also points to Dr. Maria Masferjer's assignment on December 21,

-5-

2010[1] to Plaintiff of a GAF score of 52 (R. 378), although just a few days earlier on December 17, 2010, at the time of discharge from Florida Hospital Behavioral Health Department, Plaintiff's GAF was 65. R. 371. Plaintiff argues that it was misleading for the ALJ to ignore these low GAF scores, and instead state that "[t]he claimant's treating physician gave the claimant a Global Assessment of Functioning (GAF) between 68-76, which is indicative of an individual who had some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well (Exhibit 6F)." R. 16.

Plaintiff acknowledges that the Commissioner "has declined to endorse the [GAF] score for 'use in the Social Security and [Supplemental Security Income] disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *Wind v. Barnhart*, 133 Fed. Appx. 684, 2005 WL 1317040 at *6 n. 5 (11th Cir. 2005). However, she argues that in her case the GAF scores are not being used to establish the "severity requirements of the mental disorders listings," but are another piece of "the longitudinal record giving insight to her mental condition and impairments." Doc. 18 (citing *Denton v. Commissioner of Social Security*, 6:10-CV-1893-Orl-GJK (directing "[o]n remand, the ALJ should consider and determine what weight to give these GAF scores"); *McCloud v. Barnhart*,166 F. App'x 410, 418 (11th Cir. 2006) (where the Court directed the ALJ to consider and determine what weight to place on GAF scores of 45 and 48)).

The Commissioner argues that the wide fluctuations in Plaintiff's GAF scores, some of which were assigned to Plaintiff merely days apart, underscore the limited utility of GAF scores in assessing Plaintiff's permanent limitations. The Commissioner argues that the disparate GAF scores in this case

---

[1]There is no date on the notes; however, the Table of Contents prepared by SSA dates the notes as December 21, 2010, and as authored by a different doctor, Dr. Bhalweny, but the signature on the notes reads: Dr. Masferjer. R. 378. The date may have been cut off in the fax transmission at some point in forwarding them to the SSA.

are not useful in evaluating the "longitudinal record" of Plaintiff's mental impairment and merely reflect the examiner's impression of the person's alleged symptoms or possible difficulty in social, occupational, or school functioning when seen on a particular day. Doc. 19 at 7 (citing DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 32-34 (4th ed. 2000, Text Rev.)).

The Commissioner also argues that the GAF scores do not indicate that Plaintiff had limitations that lasted for any consecutive twelve month period, as required to establish disability. Doc. 19 at 5-6. The Commissioner further argues that the ALJ did cite to the GAF scores assessed by Dr. Leo Salter at Stewart-Marchman on January 31, 2010 (Tr. 16, 300 - GAF of 68-76), and the GAF of 60 assessed by Dr. Mitchell after Plaintiff's consultative examination. R. 17, 397.

Although the ALJ specifically mentioned Plaintiff's higher GAF scores in her decision, she relied for the most part on the Consultative Examination and opinion of Dr. Jean-Marie Miller (supervised by Licensed Psychologist Dr. Clements), who based her opinion on a review of Plaintiff's mental health records and based on her own interview and testing of Plaintiff. Both Dr. Miller's examination and the ALJ's review of that examination were thorough and thoughtful. R. 17-18; 389-405. Dr. Mitchell specifically listed the mental health treatment records provided by DDS as background information she evaluated in completing the June 15, 2011 consultative examination of Plaintiff. R. 393.

The ALJ was not required to comment on every GAF score in Plaintiff's treatment records, particularly since the ALJ set forth a lengthy analysis of the consultative examiner's report. The ALJ ordered the consultative examination after hearing from Plaintiff at the May 13, 2011 hearing that she was not being treated by any particular mental health counselor because she could not find one who would accept Medicaid[2]. R. 42-43. Dr. Mitchell's consultative examination was conducted on June

---

[2]Plaintiff testified that she was only seeking Dr. Bhalwany (R. 42) of Associated Healthcare Management, but he appears to be a primary care physician, and his records do not indicate any focused mental health treatment, although he diagnosed Plaintiff with anxiety and depression and prescribed Xanax. R. 385-88.

15, 2011. R. 390. The ALJ was entitled to rely on the consultative examiner's opinion, which had specifically and thoroughly reviewed Plaintiff's mental health treatment notes and GAF scores as part of the consultative examination, taking into consideration the mental health records as a whole. Accordingly, the ALJ's opinion was based on substantial evidence.

Plaintiff also argues that the ALJ erred in ignoring the opinion of her treating physician, Dr. Vincent Mamone, that Plaintiff "has been unable to work." R. 335. She argues that, pursuant to the Eleventh Circuit's holding in *Winschel v. Commissioner of Social Security*, that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, physical and mental restrictions, and abilities despite her impairments, the ALJ must state with particularity the weight given to it and the reasons therefore. 631 F.3d 1176, 1179 (11th Cir. 2011) (citing 20 CFR §§ 404.1527 (a)(2), 416.927(a)(2)).

Plaintiff mischaracterizes Dr. Mamone's March 23, 2010 treatment notes. His notation merely reflected Plaintiff's report to him that because of swelling in her legs and elevated blood pressure, "she has been unable to work" and she "stopped all her med[ications]." R. 335. Dr. Mamone ended up diagnosing Plaintiff with new onset hypertension and anxiety, prescribed several medications and stated in the plan section of the treatment notes that "note unable to work" and completed a pre-printed half-page form which did not list any details about Plaintiff's restrictions. R. 334. In fact, Dr. Mamone wrote a large question mark in one section and "not assessed" in another section, leaving two other questions blank. R. 334. Other than that information, he simply wrote the date of Plaintiff's last visit and her height and weight at the top of the form. R. 334. Dr. Mamone's signature on such a form, without any information about Plaintiff's limitations – much less the omission of an opinion from him that Plaintiff could not work – did not merit any comment by the ALJ. As such, the ALJ's failure to discuss Dr. Mamone's "opinion" in this regard (R. 334-35) was not error.

-8-

**C.     Pain and credibility.**

Plaintiff asserts that the ALJ erred in finding her complaints about symptoms and limitations to be "not credible," when the record clearly reveals that the she suffered from documented impairments causing significant limitations.  The Commissioner argues that the ALJ considered Plaintiff's testimony and accommodated Plaintiff's mental impairments in her RFC determination when she limited Plaintiff to simple, routine tasks and only superficial contact with the public.  R. 14.

The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the symptoms as alleged, the ALJ must apply the Eleventh Circuit's three-part standard which requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged symptoms arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.  *Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

The ALJ did not specifically refer to the Eleventh Circuit's standard as such, but she cited the governing standards for evaluating subjective complaints and the applicable regulations and Social Security Ruling ("SSR") 96-7p.  R. 15.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (per curiam) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied").  The ALJ determined that Plaintiff had an objective medical condition that

could give rise to the alleged symptoms, because the ALJ then proceeded to assess the credibility of Plaintiff's limitations and symptoms.

Plaintiff argues that the record shows that the her testimony regarding her impairments was credible, and it is apparent that she suffered from severe conditions causing significant limitations. Plaintiff's alleged limitations are substantiated by her many doctors visits, her use of psychiatric drugs, and mental hospitalizations. Plaintiff argues that at no time did the treating physicians indicate that she should not be experiencing her limitations or that she was exaggerating her symptoms.

The ALJ's credibility determination concerning Plaintiff's subjective complaints states:

> After careful consideration of the record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

R. 15. Plaintiff argues the ALJ used "boilerplate" language to discredit Plaintiff without any specific discussion of why she was discredited.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

The ALJ specifically considered Plaintiff's testimony and included certain mental limitations in Plaintiff's RFC and in the hypothetical to the VE. The ALJ specifically stated:

> The record in this case has demonstrated that the claimant is an individual who can attend to her own personal needs. The claimant testified that she could dress and bathe herself. She testified that she cooks and does housework. The claimant does have a driver's license but chooses not to drive. She has hobbies such as golf or tennis. The claimant testified that she does not like to be around people and likes to be alone. She

>further testified that she feels depressed, has crying spells and has difficulty with her memory. The claimant testified that she is currently taking medications but offered no side effects from these medications such as sleepiness.
>
>The undersigned notes there is no medical evidence of record to corroborate the claimant's alleged onset date (AOD). She was treated in emergency room (ER) a week after the AOD but with no condition that would preclude all work. In October of 2009, she reported she was employed. She claimed she no longer wanted to drive, however, there is no indication as to why she could not use public transit or get a ride from husband or even one of the four individuals over the age of 18 who were living with her in 2009 ((Exhibit 2F, pg. 9). Although the claimant may prefer to be alone, this does not preclude her from interacting with others due to any of her medical determinable impairments.
>
>In terms of the claimant's alleged impairments; the medical evidence as whole supports that the claimant has mesenteric lymphadenopathy[3]; hypertension; depressive disorder; anxiety-related disorder and substance addiction (marijuana and alcohol in early remission). The claimant alleges restrictions in lifting, standing, and walking as well as not wanting to be around people, likes to be alone, feels depressed, has crying spells and has difficulty with her memory.

R. 15-16.

The ALJ credited Plaintiff's testimony that she preferred to be alone and accommodated Plaintiff's mental impairments in his RFC determination when the ALJ limited her to simple, routine tasks where she would have only superficial contact with the public. R. 14. As discussed above, the ALJ properly relied on Dr. Mitchell's consultative examination report in crediting and discounting Plaintiff's mental limitations, including that Plaintiff had a history of depression, including suicide attempts, but did not identify many distinct symptoms and some symptoms, such as fatigue may be due to her medical problems[4]. R. 17. Dr. Mitchell also noted Plaintiff's inconsistent statements in previous mental health records, compared to Plaintiff's representations during the consultative examination. R. 391 ("It is important to note that this information conflicts with previously reported information regarding family relationship [in] background information provided by DDS.").

---

[3] Plaintiff also testified about swelling from her lymphadenopathy, but claimed she only experienced swelling that interfered with her ability to work every "two months, sometimes it can be every six months." R. 39.

[4] Plaintiff stated that she did not experience side effects from her medication. R. 41.

The ALJ relied on Dr. Mitchell's opinion that Plaintiff had a history of alcohol abuse since the age of 19, which affected her behaviors, symptoms, and moods; she was diagnosed with Depressive Disorder Not Otherwise Specified, Alcohol Dependence in early full remission, and Anxiety Disorder Not Otherwise Specified, but she did not meet the criteria for Major Depressive Disorder, or Personality Disorder. R. 17. The ALJ included certain limitations based on Plaintiff's stated impairments – no more than occasional interaction with co-workers and supervisors; no more than superficial interaction with the general public; no driving; and no more than simple routine repetitive tasks. R. 19. However, based on Dr. Mitchell's report, she found Plaintiff retained ability to understand, remember, and carry out instructions without difficulty but was mildly limited in her ability to interact appropriately with the public, supervisors, and coworkers and respond appropriately to usual work situations and to changes in a routine setting; she also has periodic panic attacks, and may become argumentative under stress. R. 19 (citing 389).

In determining Plaintiff's RFC, the ALJ ended up limiting Plaintiff to light work with the following exceptions: no more than occasional stooping; no more than occasional interaction with co-workers and supervisors; no more than superficial interaction with the general public; no driving; and no more than simple routine repetitive tasks. R. 14. The ALJ's inclusion of these limitations, and the ALJ's discounting of other limitations Plaintiff testified to, were based on substantial evidence in the record.

## IV.  CONCLUSION

The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42

U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on February 7, 2013.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record